JOHN B. FORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE POPE MACNICHOL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE ROSS FORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDNA F. KNIGHT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARY FORD BACON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CARRIE J. FORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27073–27078. Promulgated May 27, 1930.

*Ferdinand Tannenbaum, Esq.*, and *Frank S. Lewis, Esq.*, for the petitioners.

*E. C. Lake, Esq.*, for the respondent.

1144

## OPINION.

MURDOCK: In determining the deficiencies, the Commissioner has included in the income of each petitioner a certain amount representing dividends received in 1922 from the Michigan Alkali Co., the Edward Ford Plate Glass Co., and the J. B. Ford Co. By his amended answers he now seeks to increase the deficiencies for 1922 by including in the gross income of each of the petitioners the dividends which each received from the three companies mentioned in the year 1921. Clearly, he is wrong in thus seeking to increase the deficiencies which he has already determined. The dividends received in 1921 were, under the Revenue Act, taxable to some one as income in 1921, but, as that year is not before us, it is immaterial whether the dividends were taxable to the individuals or to the estate. The Revenue Act does not provide that the same dividends, which were taxable as income to one or the other in 1921, are again taxable to either in 1922. *Elnora C. Haag,* 19 B. T. A. 982. Commissioner's Regulations 65, article 344.

Thus, the only question which remains to be considered is whether or not the petitioners have shown that the Commissioner erred in including in their income for 1922 the dividends which they received in 1922. In deciding this question it is unnecessary to consider and decide a number of contentions made by the respondent. The case of *Ford* v. *Nauts,* 25 Fed. (2d) 1015, had to do with a year not before us and does not control here. The probate court treated the matter as if all of the stocks belonged to the estate when in fact the situation was complicated by the previous transfers to the Ford Investment Co. Since, however, the petitioners are in worse standing here because of these previous transfers, we will discuss the case as if this complication did not exist. The order of the probate court may be given full force and effect and yet the petitioners have failed to show that the Commissioner erred in including in their income the dividends which they received in 1922 on the three kinds of stock. Obviously, these dividends were taxable either to the estate or to these

six individuals in 1922, and are not to escape taxation by reason of such circumstances as are here present. Section 219 of the Revenue Act of 1921 provides that the tax imposed by sections 210 and 211 shall apply to the income of estates, including income received by estates of deceased persons during the period of administration or settlement of the estate. The fiduciary is responsible for making a return of income for the estate for which he acts, and under subparagraph (c) the tax is imposed upon the net income of the estate and paid by the fiduciary "except that in determining the net income of the estate of any deceased person during the period of administration or settlement there may be deducted the amount of any income properly paid or credited to any legatee, heir or any other beneficiary." Where income may be thus deducted, "the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary, that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not."

We have been told that some book entries were made in 1926. This testimony leaves us in a quandary as to just what the books show, and we do not know just why it was offered by the petitioners. If book entries made in 1926 are important in this case, then the petitioners should have shown the absence of any entry as of December 31, 1922, crediting these dividends to the beneficiaries. Such an entry would have been entirely proper under the probate court's order. But we have not been told whether or not any entry was made as of December 31, 1922, crediting the dividends in question to the six individuals. Thus, if this be the petitioners' theory of the case, they have failed in their proof, for they have failed to show that the dividends were not credited to them on the books of the estate as of December 31, 1922. Dividends credited to a beneficiary on the last day of the year are included in the income of the beneficiary and taxable to him under section 219.

But are book entries made in 1926 important in the decision of this case? We think they are not. Under the order of the probate court it was only necessary that the executors charge themselves with the stocks and their proceeds *up to* December 31, 1922. On December 31, 1922, the beneficiaries could have the stock, the dividends and the interest for their own, with the court's permission. As a matter of fact, the six individuals either had the dividends on December 31, 1922, or had already disposed of them, and they never had to really give them up. The court's order and the executors' book entries were mere formal matters of no material consequence to the petitioners, for what was taken away had eventually to be re-

turned to the same six persons. Years after the event, the court held that any distribution prior to December 31, 1922, was illegal. It did not hold that the distribution on that date was improper, but quite the contrary. It required the beneficiaries to account to the executors for the principal and income of the stock " from and after the date of said distribution and *until* the 31st day of December, 1922." It further ordered " That said executors may redistribute said stock to said individuals hereinbefore named in equal parts as of the 31st day of December, 1922." Apparently, the court sought to do no more than annul the original distribution and require that it be delayed until December 31, 1922, on which date it would be legal. A distribution on December 31, 1922, would have accomplished these ends, and the effect of the order need not be extended beyond that which it was intended to accomplish. The order may be interpreted as a ratification of a distribution as of December 31, 1922.

Under these circumstances, why are not these dividends taxable to the petitioners regardless of what book entries the executors made in later years? Cf. *Hans Pederson*, 14 B. T. A. 1089; *R. V. Board*, 14 B. T. A. 374; *Grace Scripps Clark et al.*, 1 B. T. A. 491. Suppose they had never made any entries for several years, would the tax liability of the estate and that of each of the six beneficiaries have to remain open and subject to change, dependent only upon their arbitrary selection of a date as of which they would credit or distribute the dividends? We do not mean there has been any tax dodging in this particular case. But revenues must be collected more promptly than that, and, as was said in a different connection by the Circuit Court for the Second Circuit in *Brewster* v. *Gage*, 30 Fed. (2d) 604:

It would be an unfortunate construction, which is not demanded by the statute, that would place it within the power of personal representatives and the real owners, namely, the legatees or distributees, to defer distribution in order to escape tax.

If the dividends in question were ever income of the estate of Edward Ford, they were income received by the estate during the period of administration or settlement of the estate. Such income under section 219 (c) may be deducted from the net income of the estate upon which tax is paid by the fiduciary if properly paid or credited during the year to any beneficiary. In this case the beneficiaries had in fact received the income in 1922, and they were never required thereafter to actually surrender it to the executors. The court order required no more than a change in accounting. One beneficiary returned the dividends as part of her income in 1922, but whether or not the others did does not clearly appear from the evidence. Under such circumstances it seems to us that within the meaning of section

219 of the Revenue Act of 1921, on December 31, 1922, the income was properly paid or credited to the beneficiaries, and on that date it was distributable to the beneficiaries pursuant to the instrument or order governing the distribution, whether distributed or not. The Commisioner did not err in including the dividends in the petitioner's net income under section 219 (d).

Reviewed by the board.

*Judgment will be entered under Rule 50.*

---

VAN FOSSAN, dissenting: I dissent from the conclusion that the respondent did not err in including the dividends in question in the petitioners' income, and from the reasoning upon which such conclusion is based.

The order of the Probate Court of Lucas County, Ohio, entered April 9, 1926, and referred to in the findings of fact was determinative of the legal title to the stocks in question. It decreed, among other things, that the distribution of these stocks in 1920 was " without authority, illegal and of no effect." It decreed also that the recipients of the stocks, namely, the petitioners herein, should account to the executors of the estate of Edward Ford, deceased, for the principal and the income of the said stocks received by them and were to be charged with interest on the dividends from the time of the illegal and void distribution until December 31, 1922. The order further provided that the stocks might be redistributed by the executors as of December 31, 1922. It contained, however, no provision or direction with respect to the further distribution of the dividends for 1921 and 1922.

The order of the probate court was complied with by entries in the books of the estate as shown in the findings of fact.

In the case of *Ford* v. *Nauts*, 25 Fed. (2d) 1015, incorporated by reference in the statement of facts, the United States District Judge made certain conclusions of law which were admitted as evidence in the present proceedings. Among these conclusions, he stated that " the final order and decree of the Probate Court of Lucas County on April 9, 1926, in the matter of the Ford Estate is determinative of the ownership and control of the stocks of the J. B. Ford Company, the Edward Ford Plate Glass Company and the Michigan Alkali Company and the income thereon during the year 1921." In my opinion the said order was also determinative of the ownership and control of the income from said stocks during 1922. It determined that during the whole of that year the estate of Edward Ford was the rightful owner of such income. This order and decree of the Probate Court of Lucas County determining the ownership of property was a judgment *in rem* and is binding on the respondent and

this Board alike. The probate court which made the order was a court of competent jurisdiction, was in the fullest sense a court of record, whose judgments and decrees import absolute verity, and was competent to decide its own jurisdiction and to exercise it to final judgment without setting forth the facts and evidence on which it was rendered. (Sections 7 and 8 of the Constitution of Ohio; section 10492 of the General Code of the State of Ohio; *Crawford* v. *Zeigler*, 84 Ohio St. 224; 95 N. E. 743; *Wilberding* v. *Miller*, 90 Ohio St. 28; 106 N. E. 665.) The Probate Court of Lucas County therefore had jurisdiction to determine finally as against all the world the ownership of the property in question (*Tilt* v. *Kelsey*, 207 U. S. 43, 56), and its judgment in respect thereto is binding in state courts, courts of the United States, and upon this Board. *Simmons* v. *Saul*, 138 U. S. 439; *Lytle* v. *Lansing*, 147 U. S. 59; *Doran* v. *Kennedy*, 237 U. S. 362; *Marshall Field*, 15 B. T. A. 718; *Estate of Henry Mayer*, 16 B. T. A. 1164.

While the said order of the Probate Court of Lucas County provided that the stocks in question might be redistributed as of December 31, 1922, it made no such provision concerning the dividends on such stocks for the year 1922. Redistribution of the stocks to the beneficiaries as of December 31, 1922, or as of a later date, would not carry with it, as a matter of law, legal title to dividends paid prior to the date of such redistribution of the stock. There being no contrary provision in the said order of the probate court, the legal title to the said dividends remained in the executors of the estate of Edward Ford after December 31, 1922. Nor were the beneficiaries of the estate entitled to the amount of such dividends until the court made an order redistributing them, or until the executors lawfully made an entry in their books crediting the beneficiaries with such redistribution.

The final accounting of the executors of the estate was dated December 15, 1928. The proof shows that the executors then charged themselves with a balance on hand of more than $2,000,000. They charged themselves with the receipt of the principal value of the stocks in question pursuant to the order of the probate court and credited themselves with a redistribution to the beneficiaries of such principal value of the stocks. They charged themselves with the receipt of the amount of the said dividends and interest thereon pursuant to the said order of the probate court, but did not credit themselves with a redistribution to the beneficiaries of the amount of such dividends. If follows that at the date of the final accounting the amount of the said dividends was included in the balance on hand with which the executors charged themselves. Therefore, giving full force to the order of the probate court, as we are bound to do,

the amount of said dividends had not been paid to any legatee, heir or beneficiary during 1922. They were not credited to any beneficiary during that year on the books of the estate and were therefore not distributable during said year.

It is true, of course, that the amount of the said dividends actually remained in the possession of the petitioners. But I concur in the conclusion of law made by the District Judge in the case of *Ford* v. *Nauts, supra,* to the effect that the amount of the said dividends was received by the beneficiaries for the executors of the estate of Edward Ford. This situation could not be lawfully changed except by decree of the court or by action of the executors by which they lawfully redistributed the amount of the dividends to the beneficiaries or credited such amount to them in the books of the estate.

The probate court approved the executors' account dated September 15, 1928. By the action of the executors and by the approval of the probate court thereof, shown in the findings of fact, the executors became charged with liability of tax on the amount of the said dividends.

For the foregoing reasons, I am of the opinion that the amount of the dividends in question was not taxable to the petitioners under any provisions of section 219 of the Revenue Act of 1921, and that the respondent erred in including the amounts of said dividends in the gross income of the petitioners, respectively, for the year 1922.