### CUFF v. UNITED STATES et al.
#### No. 6885.

Circuit Court of Appeals, Ninth Circuit.
April 3, 1933.

**Rehearing Denied May 3, 1933.**

Frank E. Downey, of Long Beach, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Ignatius F. Parker, Asst. U. S. Atty., and H. C. Veit, Atty., Veterans' Administration, all of Los Angeles, Cal.

Rollin L. McNitt, of Los Angeles, Cal., for appellees Kessler et al.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

This case is here on appeal from the judgment of the District Court denying complainants' motion for a judgment on the pleadings and dismissing complainants' second amended bill in equity. It will therefore be necessary to set forth the allegations of the bill somewhat at length. In substance, it alleges that on September 27, 1918, James R. Cuff was killed in line of duty while serving with the American Expeditionary Forces in France; that he had applied for, and there was issued to him, under the War Risk Insurance Act (40 Stat. 398 as amended), a policy of insurance on his life, in the sum of $10,000; that Florence Cuff, as wife, was named as beneficiary in said policy; that at the time the said Florence Cuff was not the lawful wife of said James R. Cuff (hereinafter referred to as the deceased), but was the lawful wife of one Millard W. Kessler; that therefore a certain marriage ceremony participated in by said deceased and said Florence Cuff, at Evanston, state of Wyoming, on or about May 11, 1918, was null and void; that at the time of the issuance of said policy, and at the time of the death of said James R. Cuff, who died intestate, neither the said Florence Cuff nor her son, James R. Cuff, Jr., born October 26, 1918, was within the permitted class of beneficiaries named in said War Risk Insurance Act and entitled by the terms thereof to participate as such beneficiaries in the proceeds of said policy of insurance; that said deceased left surviving him, as sole heirs at law, appellant and Edward J. Cuff (who declined to join in this appeal), complainants in the District Court, and Wm. J. Cuff, a half-brother, now deceased; that as soon as complainants discovered that said Florence Kessler, alias Florence Cuff, had not been divorced from her lawful husband, Millard W. Kessler, they caused notice thereof to be given to the United States Veterans' Bureau, at Washington, D. C., and presented complainants' claim to the benefits of said insurance; that said Veterans' Bureau has failed and refused to determine who are the proper heirs and beneficiaries to the proceeds of said insurance, and has failed and refused to allow or pay the claim of complainants to the proceeds of said insurance; that during the month of March, 1918, said Florence Kessler, alias Florence Cuff, caused a complaint to be filed in the Third judicial district court of the state of Utah in which she prayed for a divorce from said Millard W. Kessler; that no divorce has been granted in said action, nor has said marriage been terminated; that said Florence Kessler, alias Cuff, at the time she and said deceased made application for and obtained a marriage license on May 11, 1918, falsely represented that her true name was Florence Butler, and concealed her identity and the fact that she had not been divorced from said Kessler, and that therefore the marriage between the said Florence Kessler, alias Cuff, and said deceased was null and void; that, after the death of said James R. Cuff, on December 15, 1918, the said Florence Kessler, alias Cuff, by false and fraudulent representations made to the War Risk Insurance Bureau, and without mentioning the child, James R. Cuff, Jr., born October 26, 1918, induced the United States Veterans' Bureau to allow her claim for insurance and to make the monthly payments thereof to her until complainants, in November, 1927, discovered her fraud and deception and furnished the United States Veterans' Bureau with proof thereof; that on or about January 28, 1928, the said Florence Kessler, alias Cuff, on behalf of herself and

said child, James R. Cuff, Jr., and continuing her fraudulent design and false representations, caused to be filed with the county clerk of the county of Salt Lake, state of Utah, a petition for letters of administration upon the estate of said deceased, and at the hearing of said petition falsely testified that she had separated from her lawful husband, Millard W. Kessler, in the early part of January, 1918, and that by reason of the false representations and deceit she succeeded in obtaining from the Third judicial district court of the state of Utah a decree declaring that the said child is the issue of said deceased; that complainants appeared in said proceeding in said district court, and "served and filed their cross-petition, setting forth the unlawful marriage between the deceased, James R. Cuff, and said petitioner, Florence Kessler, representing herself to be Florence N. Eynon, formerly calling herself Florence Cuff, and alleging that said minor child was the issue of a lawful marriage between said Florence Kessler and one Millard W. Kessler, and they, themselves, petitioned for Letters of Administration, claiming right to administer upon the estate of said deceased; that a hearing was had thereon, briefs of points and authorities submitted therein, findings of fact and conclusions submitted to said court therein, and signed and ordered filed by said court, wherein it found that the marriage between said deceased, James R. Cuff, and said Florence Kessler, calling herself Florence Butler, at the time of the marriage, was unlawful, but that nevertheless the said child, so born on the 26th day of October, 1918, under the statutes and laws and decisions of the courts of the State of Utah, was legitimate issue of said James R. Cuff, the deceased, and was entitled to inherit his estate, consisting solely of War Risk Insurance, in the sum of Ten Thousand Dollars; that a copy of said findings of fact and conclusions of law, so made by said court, are hereto attached, marked 'Exhibit A,' 'Exhibit A-1,' 'Exhibit A-2' and 'Exhibit A-3,' and made a part of this bill as though specifically set forth in full herein; that said court, immediately after the signing, and ordering filed, of said findings of fact and conclusions of law, caused to be filed therein, its decree, in accordance with said findings; that a copy of said decree, so made by said court, is hereto attached, marked 'Exhibit B,' and made a part of this bill, as though specifically set forth in full herein; that said findings of fact, conclusions of law, and decree based thereon, are against and contrary to public policy, and unjust, unfair, and against the principles of equity and good

conscience, and contrary to the principles of the common law; * * * that your complainants are informed and believe, and therefore, on such information and belief, allege that the Third Judicial District Court, of the County of Salt Lake, State of Utah, in the trial of the issues presented by the petitions in said proceedings, for Letters of Administration, was wholly without jurisdiction, or right, in said estate, consisting wholly of War Risk Insurance, to hear, and/or try, and/or determine said issues raised therein; * * * and without evidence to show that the United States Veterans Bureau had, first, found who was entitled to inherit; that said court was without jurisdiction, in any event, upon the issues raised in said proceedings, jurisdiction, by the said Act, having been vested in the United States District Court, where one or more of those claiming, as beneficiaries, reside."

In addition to the above, the bill of complaint contains many allegations of evidentiary matter which, for obvious reasons, have been omitted.

The bill of complaint contains the usual prayer for relief, and in addition thereto the following: "That the court issue a permanent injunction enjoining and restraining the defendant, Florence Kessler, alias Florence N. Eynon, either in behalf of herself, or in behalf of her minor child, named by her as James R. Cuff, Jr., or either of them, from further proceeding with the action instituted in the Third Judicial District Court, of the County of Salt Lake, State of Utah, for Letters of Administration, and enjoining and restraining them, and each of them, from claiming, or accepting, any of the proceeds of said insurance, and/or from again petitioning for administration of said estate; that the findings of fact, decree and judgment of the Third Judicial District Court of the State of Utah, finding that the minor child, known as James R. Cuff, Jr., is the issue of the deceased, James R. Cuff, and entitled to administer upon his estate, and granting Letters of Administration, in accordance with said findings, be declared void."

The findings of fact as made by the state district court are to the effect that deceased was, for a period of at least two years prior to his entering the Army, a resident of Salt Lake City, state of Utah; that upon his death deceased left an estate in the county of Salt Lake, in said state, consisting of an insurance policy of the War Risk Insurance Bureau of the United States, in the sum of $10,000; that said James R. Cuff, Jr., was

and is the legitimate child of said deceased; that prior to her marriage to deceased, said Florence Kessler, alias Cuff, was the wife of Millard W. Kessler, but that she in good faith believed that she was divorced from said Kessler; that "the marriage between James R. Cuff and said Florence Cuff was illegal, because the prior marriage with said Kessler had not been dissolved, but notwithstanding that fact the Court finds that under the statutes of the State of Utah said James Robert Cuff is the legitimate son of James R. Cuff, as the issue of said marriage, and is the sole surviving heir at law, entitled to the estate left by said deceased and entitled to nominate the administrators of said estate."

The conclusions of law and the final decree of the court were in accordance with the findings.

The District Court dismissed complainants' bill upon the ground that "it appears from the face of said bill that the Court had no jurisdiction because the complainants are not proper parties entitled to maintain said bill, and upon the further ground that it appears from the face of said bill that the court has no jurisdiction of the subject matter of the action as the issues between the parties have been adjudicated and the matter is now res adjudicata, and upon the further ground that neither said bill, nor any of the several counts therein, does not state facts sufficient to constitute a cause of action against the defendants," or either of them.

■ Ordinarily a motion to dismiss is not a proper mode of raising the defense of res adjudicata; but where, as here, the bill on its face fully presents the record of the former case, such defense may be presented by motion or by demurrer. Hewitt v. Great Western Beet Sugar Co. (C. C. A. 9) 230 F. 394, 398; Keown v. Hughes (C. C. A. 1) 265 F. 572, 575.

■ It is, of course, fundamental that a decree of a court of record which has acquired jurisdiction of the subject-matter and of the parties, and has adjudicated all of the matters raised by the pleadings, cannot be collaterally attacked.

Appellant, however, contends that, under the circumstances disclosed by the bill, the state district court never acquired jurisdiction of decedent's estate, and that therefore its judgment is void and may be attacked either collaterally or in a direct proceeding.

The constitution of the state of Utah (art. 8, § 7) provides that: "The District Court shall have original jurisdiction in all matters civil and criminal, not excepted in this consti-

tution, and not prohibited by law; appellate jurisdiction from all inferior courts and tribunals, and a supervisory control of the same."

In the case of State ex rel. Bishop, Attorney General, v. McNally, 13 Utah, 25, 43 P. 920, 921, it is said: "The constitution manifests a general intent to dispense with probate courts, and to give the district courts jurisdiction of probate matters."

■■ We find no merit in appellant's contention that the state court was without jurisdiction. The allegations of the bill and the record of the state court show that it had jurisdiction of the subject-matter and of the parties, and "all the powers and machinery necessary to give full and adequate relief." Case of Broderick's Will, 21 Wall. 503, 510, 22 L. Ed. 599. If the determination of that court was wrong, appellant's remedy was to appeal from that determination. American Surety Co. v. Baldwin, 287 U. S. 156, 53 S. Ct. 98, 77 L. Ed. ——. He cannot sit by, permit the judgment to become final, and then bring another action in another court to litigate again the issues so determined. "Such a practice would place no end to litigation." Doran v. Kennedy, 237 U. S. 362, 35 S. Ct. 615, 617, 59 L. Ed. 996.

Appellant not only appeared in the state court and submitted himself to its jurisdiction, but he resisted the petition of said Florence Kessler, alias Cuff, for appointment as administratrix of decedent's estate, and filed his own petition for the appointment by the court of a person other than the said Florence Kessler, alias Cuff, qualified under the laws of the state of Utah to act as administrator.

Appellant further contends "that even though the state court might be a court of general probate jurisdiction, it was limited, in the matters before it, by the exclusion act of Congress, under the provisions of both the War Risk Insurance Act, and of the World War Veterans' Act, from determining the one to whom the insurance was payable."

The provisions referred to read, in part, as follows:

Section 13 (War Risk Insurance Act [40 Stat. 399]): "That the director, subject to the general direction of the Secretary of the Treasury, shall administer, execute, and enforce the provisions of this Act, and for that purpose have full power and authority to make rules and regulations not inconsistent with the provisions of this Act, necessary or appropriate to carry out its purposes, and

shall decide all questions arising under the Act."

Section 5 (World War Veterans' Act [38 USCA § 426]): "The director, subject to the general direction of the President, shall administer, execute, and enforce the provisions of this chapter, and for that purpose shall have full power and authority to make rules and regulations, not inconsistent with the provisions of this chapter, which are necessary or appropriate to carry out its purposes, and shall decide all questions arising under this chapter and all decisions of questions of fact affecting any claimant to the benefits of Parts II, III, or IV of this chapter, shall be conclusive except as otherwise provided herein."

In this connection, appellant also relies upon section 19 of the World War Veterans' Act, as amended (38 USCA § 445), reading, in part, as follows: "In the event of disagreement as to claim under a contract of insurance between the bureau and any person or persons claiming thereunder an action on the claim may be brought against the United States either in the Supreme Court of the District of Columbia or in the district court of the United States in and for the district in which such persons or any one of them resides, and jurisdiction is conferred upon such courts to hear and determine all such controversies. * * *"

▮ The latter section conferred upon the District Court exclusive jurisdiction of actions on a war risk insurance policy, but that jurisdiction is to be exercised "in accordance with the laws governing the usual procedure of the court in actions at law for money compensation" (Law v. United States, 266 U. S. 494-496, 45 S. Ct. 175, 176, 69 L. Ed. 401), and it does not undertake to confer upon such court probate jurisdiction or jurisdiction to entertain or review probate proceedings.

We are of opinion that neither of these acts supports the contention, and that neither was intended to confer upon the Bureau or the director the power or authority to determine the questions determined by the state court in the proceeding above referred to. Singleton v. Cheek, 284 U. S. 493, 52 S. Ct. 257, 76 L. Ed. 419, 81 A. L. R. 923. Undoubtedly, "Congress intended to confer upon the administrative officer mentioned full and exclusive authority to decide all questions arising under the act in so far as they involved the exercise of executive duties and required the determination of disputed questions of fact, and to the extent indicated, to make such decisions final and not reviewable by the courts" (Silberschein v. United States [D. C.] 280 F. 917, 922); but it is plain that Congress did not confer upon the director judicial powers and functions.

Holding, as we do, that the state court had jurisdiction of the subject-matter and of the parties, and was empowered to and did determine all of the matters in the pleadings, including the question of the legitimacy of the child, James M. Cuff, Jr., it becomes unnecessary to consider the other questions discussed in the briefs. If, as the state court determined, the child is the legitimate child of the decedent, appellant has no claim to the estate, and therefore no cause of action against the defendants, or any of them. Singleton v. Cheek, supra.

It follows that there was no error in denying complainants' motion for judgment on the pleadings, nor in sustaining the motion to dismiss.

The decree is affirmed.